657 S.E.2d 752

**In the Matter of Kelly Christen EVANS, Respondent.**

**No. 26430.**

Supreme Court of South Carolina.

Submitted Jan. 11, 2008.

Decided Feb. 11, 2008.

484

Lesley M. Coggiola, Disciplinary Counsel, and William C. Campbell, Assistant Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

Stephanie N. Weissenstein, of Law Offices of Desa A. Ballard, PA, of West Columbia, for respondent.

PER CURIAM.

In this attorney disciplinary matter, respondent and the Office of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by Consent pursuant to Rule 21, RLDE, Rule 413, SCACR. In the agreement, respondent admits misconduct and consents to any sanction in Rule 7(b), RLDE, Rule 413, SCACR. She requests that any suspension or disbarment be made retroactive to the date of her interim suspension, February 26, 2007. *In the Matter of Evans*, 372 S.C. 254, 642 S.E.2d 578 (2007). In addition, respondent agrees to pay the costs incurred by ODC and the Commission on Lawyer Conduct in investigating this matter. We accept the agreement and disbar respondent from the practice of law

in this state, retroactive to the date of her interim suspension. The facts, as set forth in the agreement, are as follows.

## FACTS

Respondent's misconduct stems from her failure to understand the business operations of her legal practice and her failure to manager her staff. Respondent admits not performing monthly reconciliations as required by Rule 417, SCACR, and, as a consequence of that failure, having individual client accounts with a shortage of funds that went undetected for months.

In particular, respondent admits she had several accounts that were short of funds after loans closings. In one instance, she permitted a refinance equity line closing to take place where the borrower received $150,000.00 in funds although respondent had not received the funds from the lender. This error was carried on respondent's account until brought to her attention by her title insurance company's audit more than one year after the closing. Respondent required seven months to recover the funds from the borrower. Respondent admits she failed in her responsibilities in this closing.[1]

In another loan closing, respondent admits she disbursed approximately $21,000.00 without confirming the funds had been wired to her account. In this matter, respondent has not recovered the funds from the borrower and respondent has replaced the disbursed funds with her own personal funds. Respondent admits she carried the resulting $21,000.00 deficit in her trust account for approximately two years after the closing. Respondent admits she failed in her responsibilities as attorney in this closing.

Respondent admits she did not understand the financial aspects of her business and, therefore, hired an accountant to manage the financial aspects of her practice. While the accountant did perform recordkeeping and reconciliations, respondent now recognizes that the reconciliations were inaccurate, incomplete, and did not come close to meeting the requirements imposed by Rule 417, SCACR. Respondent

---

1. Respondent admits that, while she understood the HUD–1 Settlement Statement, she did not understand that the funds shown on the balance sheet had not been received.

admits she did not review the accountant's trust account reconciliations.[2]

Respondent admits that, at the time of the initial complaint, she had an outstanding balance due to her title insurance company of $60,000.00. Respondent had failed to hold in trust the title insurance premiums that were collected by her at closings. Respondent's practice with the title insurance premiums had been to deposit the premiums when collected at closings into a bank account titled "K.C.E. Title." Respondent admits that the balance in the K.C.E. Title account was between $3,000.00 and $5,000.00 when it should have been sufficient to pay the outstanding amount due the title insurance company.

Respondent admits she transferred funds from the K.C.E. Title account to bank accounts out of state for personal reasons, including payment of her personal mortgage. She states the title insurance company has been paid from monies from the out of state accounts.

Further, respondent admits she wired personal mortgage payments from her trust account on four occasions. She claims this was done in error and that she discovered the error a month and one half later when she received the bank statement. Respondent admits that she did not have any of her own money in the trust account. She states the monies have since been paid back to the trust account.

Additionally, respondent admits she relied on her staff to handle day to day affairs, including office accounting and document preparation, and that she did not adequately supervise her staff. Respondent permitted staff members to sign her name as attorney to closing documents and, at the same time, sign as witness to respondent's "signature."

Finally, respondent admits she failed to make timely payments to her employees' 401K accounts after withholding the funds from the employees' paychecks. Further, respondent admits that she added the funds to the employees' 401K accounts in October 2007, eight months after her interim

---

2. Since her interim suspension, respondent has made efforts to have the accounts reconciled and to bring the client accounts into balance. It is believed there is a surplus of funds in the accounts at this time.

suspension. Respondent agrees that she failed to safeguard her employees' funds, some of which were collected from her employees in early 2006.

## LAW

Respondent admits that, by her misconduct, she has violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (lawyer shall provide competent representation to a client); Rule 1.3 (lawyer shall act with reasonable diligence and promptness in representing a client); Rule 1.15 (lawyer shall hold property of clients and third persons in the lawyer's possession in connection with a representation separate from the lawyer's own property); Rule 5.3 (partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that a non-lawyer employees conduct is compatible with the professional obligations of the lawyer); and Rule 8.4(a) (it is professional misconduct for a lawyer to violate the Rules of Professional Conduct).

Respondent further admits her misconduct is grounds for discipline under Rule 7, RLDE, of Rule 413, SCACR, specifically Rule 7(a)(1) (it shall be ground for discipline for lawyer to violate Rules of Professional Conduct). In addition, respondent admits her misconduct violated Rule 417, SCACR.

## CONCLUSION

We accept the Agreement for Discipline by Consent and disbar respondent. The disbarment shall be retroactive to the date of respondent's interim suspension. Within thirty (30) days of the date of this opinion, respondent shall pay the costs incurred by ODC and the Commission on Lawyer Conduct as a result of the investigation in this matter. Within fifteen (15) days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that she has complied with Rule 30 of Rule 413, SCACR, and shall also surrender her Certificate of Admission to the Practice of Law to the Clerk of Court.

In addition, should it be determined that any restitution remains outstanding, ODC and respondent shall file a restitution plan with the Court within thirty (30) days of the date of

this opinion. In the plan, respondent shall agree to pay restitution to all clients, banks, and other persons and entities who have incurred losses as a result of her misconduct in connection with this matter. Moreover, in the restitution plan, respondent shall agree to reimburse the Lawyers' Fund for Client Protection for any claims paid as a result of her misconduct in connection with this matter.

**DISBARRED.**

TOAL, C.J., MOORE, WALLER, PLEICONES and BEATTY, JJ., concur.